**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

                                     Criminal No: 23-cr-20481

v

                                     Hon: Laurie J. Michelson

AUSTIN RAY SABB-VISGA,

        Defendant.

_____/

**<u>DEFENDANT'S SENTENCE MEMO</u>**

***"Our sentences are too long, our sentences are too severe, our sentences are too harsh . . . there is no compassion in the system. There's no mercy in the system."[1]***

***"Our resources are misspent, our punishments too severe; our sentences too long... the sentencing guidelines are responsible in part for the increase in prison terms. . ."[2]***

---

[1] Testimony of Justice Anthony Kennedy before the Senate Judiciary Committee February 14, 2007 in response to Senator Whitehouse), *video link* accessible at Professor Berman's Sentencing Law and Policy Blog of Feb. 15, 2007)

[2] August  9, 2003 Speech of Justice  Kennedy at the ABA Annual Meeting (available at http://www.abanow.org/2003/08/speech-by-justice-anthony-kennedy-at-aba-annual-meeting/)

## **INTRODUCTION**

Austin Ray Sabb-Visga is a 30-year-old man who appears before this Court for sentencing. Mr. Sabb-Visga has pled guilty to one count of Conspiracy to Sexually Exploit Children, 18 U.S.C. § 2251(a), 18 U.S.C. § 2251(e), and 18 U.S.C. § 2, and two counts of Sexual Exploitation of Children, 18 U.S.C. § 2251(a), 18 U.S.C. § 2251(e). Mr. Sabb-Visga faces a mandatory minimum on each of the three counts of conviction of 180 months, discretion by the Court to run each count consecutively, guidelines of life (limited by the combined statutory maximums of 90 years), and a binding sentence agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) in his Rule 11 plea agreement of 480 months to 720 months. In addition, the United States has agreed in the Rule 11 plea agreement to recommend that the sentence in the Present Case be concurrent to the sentence of imprisonment in his State case in the 31st Circuit Court, case no. 23-001352-FC.

For all of the following reasons, Mr. Sabb-Visga respectfully requests that this Honorable Court sentence him to the minimum of the 11(c)(1)(C) sentence agreement of 480 months.

## SENTENCING ARGUMENT

Mr. Sabb-Visga acknowledges that his guidelines are life (limited by the combined statutory maximums of 90 years), that each of the three counts carry a mandatory minimum of 15 years (consecutive discretionary with the Court), and that his Rule 11 plea agreement includes a binding sentence agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) of 480 months to 720 months.  However, after *Booker*, Mr. Sabb-Visga's guideline range is advisory only, and this Court **must** consider many other factors and sentence Mr. Sabb-Visga only to that sentence which is "sufficient, but not greater than necessary" to accomplish the societal purposes of sentencing.

The Defense submits that this sentence would be no more than the binding sentence agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) in his Rule 11 plea agreement of 480 months to 720 months. This sentence would best accomplish the societal purposes of § 3553(a) for all of the following reasons:

**A.** **This Court should sentence Mr. Sabb-Visga in the Present Case currently to the state sentence on related conduct and grant him a variance to adjust his sentence to account for him being on a writ for most of the time the federal case was pending. [3553(a)(1) factor – history and characteristics of the offense and the defendant].**

On or about June 22, 2023, Mr. Sabb-Visga was arrested by the Michigan State Police in connection with his involvement in the child sexual activity that

forms the basis for both the state charges as well as the counts in the Indictment in the Present Case.  Mr. Sabb Visga was prosecuted in the St. Clair County Circuit Court. On or about June 23, 2023, Mr. Sabb-Visga was charged by Complaint in Federal Court in connection with the Present Case. Mr. Sabb-Visga consented to detention.  From June 23, 2023, to May 6, 2024, Mr. Sabb-Visga remained in state custody (totaling 319 days), and appeared before this Court by way of a federal writ.

On August 17, 2023, Mr. Sabb-Visga was Indicted on the Present Charges, he was arraigned on the Indictment on August 21, 2023, and detention was continued.  On May 6, 2024, Mr. Sabb-Visga was granted a personal bond in the state case, and went in Federal Custody by the US Marshalls. Mr. Sabb-Visga has remained in Federal Custody since May 6. The net result is that Mr. Sabb-Visga was held in state custody to answer the Federal charges in the Present Case from June 23, 2023, to May 6, 2024, a total of 319 days, and will not receive credit from the BOP on his state sentence.

Mr. Sabb-Visga ultimately pled guilty in the state case, and was sentenced on June 24, 2024, to two consecutive indeterminate terms of 25 to 50 years in the MDOC, to be served consecutively to each other. As the Pre-sentence report correctly points out, at the time of his sentence in the Present Case (currently scheduled for September 18, 2024), the related state conviction will still be

"undischarged" and not "discharged" as recognized in the Rule 11.[3]  Further, there

is no dispute that the allegations/prosecution in the state case and the St. Clair County

conviction are relevant conduct in the Present Federal charges.[4]

Finally, the Rule 11 plea agreement contained language that "the United

States recommends that the sentence of imprisonment in this case run concurrently

with the Defendant's sentence of imprisonment in the State of Michigan, 31st Circuit

Court, Case No. 23-001352-FC.

U.S.S.G. §5G1.3(b) states that

> a term of imprisonment resulted from another offense that is relevant
> conduct to the instant offense of conviction . . . the sentence for the
> instant offense ***shall*** be imposed as follows:
>
> (1) the court ***shall*** adjust the sentence for any period of imprisonment
> already served on the undischarged term of imprisonment if the
> court determines that such period of imprisonment will not be
> credited to the federal sentence by the Bureau of Prisons; and
>
> (2) the sentence for the instant offense ***shall*** be imposed to run
> concurrently to the remainder of the undischarged term of
> imprisonment.[5]

What is important to note is the mandatory language of U.S.S.G. §5G1.3(b),

which states that if section (a) does not apply, and "the undischarged term of

---

[3] *See* Presentence Investigation Report, ¶ 137, pp 27 – 28; ¶ 138, p 28.

[4] Presentence Investigation Report, ¶ 137, pp 27 – 28; ¶ 138, p 28
[5] USSG §5G1.2(b).

imprisonment resulted from an offense that is relevant conduct to the instant offense," then the District Court "***shall*** adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment," and "***shall*** be imposed to run concurrently to the remainder of the undischarged term of imprisonment."

Therefore, in the Present case, U.S.S.G. §5G1.3(b) instructs that this Honorable Court is required to (a) adjust Mr. Sabb-Visga's sentence by the approximately 319 days for the time he was held in state custody to answer the Federal charges, from June 23, 2023, to May 6, 2024;[6] and (b) order Mr. Sabb-Visga's sentence to run concurrent[7] to the remainder of his State sentence.[8]

Mr. Sabb-Visga has sat in State custody for nearly one year for charges that are part of the Present Case.  None of this time will be credited by the BOP toward his Federal sentence. There is no dispute that the allegations/prosecution in the state case and the St. Clair County conviction are relevant conduct in the Present Federal

---

[6] U.S.S.G. §5G1.3(b)(1).

[7] U.S.S.G. §5G1.3(b)(2).

[8] *See also, United States v Morris*, 458  F.3d 757 (8th Cir. 2006*); United States v. Armstead*, 552 F.3d 769 (9th Cir. 2008) (failing to give credit for undischarged sentence was plain error); *United States v. Kieffer*, 681 F.3d 1143 (10th Cir. 2012); *United States v. Knight*, 562 F.3d 1314 (11th Cir. 2009) (district court reversed for failing to give credit for undischarged sentence).

charges. Consequently, the societal purposes of sentencing are best served by this Court following the directives of U.S.S.G. §5G1.3(b), adjust Mr. Sabb-Visga's sentence by 319 days he has served on the State sentence, and order his sentence to run concurrent to the undischarged State sentence.

**B.    Mr. Sabb-Visga 's behavior is mitigated to some extent by the fact that Sabb-Visga had a difficult childhood – his father largely abandoned him, he witnessed and suffered from severe domestic violence and sexual assault as a young child, which led to significant psychological problems, a severe substance abuse problem, and multiple suicide attempts. [3553(a)(1) factors – history and characteristics of the defendant].**

As noted throughout this Memorandum, there is no question that the facts of the Case are troubling and cannot be defended. However, Mr. Sabb-Visga's behavior is mitigated to some extent by his extraordinarily difficult childhood and his positive accomplishments since then. Therefore, this Court should grant a variance, and sentence Mr. Sabb-Visga to the minimum of the 11(c)(1)(C) sentence agreement of 480 months.

As chronicled in the Presentence Report (PSR), Mr. Sabb-Visga had a very difficult childhood. His father – who was an alcoholic and drug addict (to crack cocaine), basically abandoned him when he was young. For the short periods of time Mr. Sabb-Visga's father was in his life, the father was physically abusive to him (including his father hitting Mr. Sabb-Visga with his hands), his mother (including

Mr. Sabb-Visga witnessing him smashing plates on her face), and allowed his brother to sexually assault him beginning when he was 9 years old.

Mr. Sabb-Visga was a victim of sexual abuse, multiple times, at a very young age. The first incidents of sexual abuse occurred when Mr. Sabb-Visga was five years old, when his stepbrother (10 or 11 years old at the time) forced him to perform oral sex on him twice. Then, Mr. Sabb-Visga's father allowed his brother (Uncle Jeff) to fondle him and perform oral sex on him approximately 20 times when he was between the ages of 9 and 11. According to the Adverse Childhood Experiences Assessment, Mr. Sabb-Visga scores at a very high 8 out of 10 level of risk for negative behavioral and health outcomes due to child abuse.

This resulted in Mr. Sabb-Visga becoming sexualized as a young child/pre-teen. Mr. Sabb-Visga began watching pornography when he was 11 years old, and also began having sexual experiences with other middle-aged boys when he was 11. By the time Mr. Sabb-Visga was thirteen years old, he was having sex with adult men he met on Craigslist.

It should not be surprising that this chaotic and abusive childhood lead to Mr. Sabb-Visga developing "a significant history of mental and emotional problems," beginning when he was very young. As documented by his maternal grandparents, Mr. Sabb-Visga was "always prone to depression, even as a young man." Mr. Sabb-Visga began therapy when he was 6, after his mother placed him there after "his

father came back into the picture."

At 17, following his first suicide attempt, Mr. Sabb-Visga was diagnosed with anxiety, bipolar disorder, and depression. Then, in 2018, following his second suicide attempt, Mr. Sabb-Visga was diagnosed with major depressive disorder, chronic and recurrent. Later, during an involuntary hospitalization in 2022 as the result of continued suicidal ideations, Mr. Sabb-Visga was diagnosed with major depressive disorder. Finally, when he sought out counseling at professional counseling center, Mr. Sabb-Visga's "presenting problem" was diagnosed as "overwhelming depression and anxiety."

These serious and significant psychological issues ultimately led Mr. Sabb-Visga to develop a significant substance abuse problem. Mr. Sabb-Visga began using methamphetamine in April 2022. Almost as soon as he tried it, he immediately became addicted. Mr. Sabb-Visga tried quitting using the drug multiple times but was not successful. According to the Texas Christian University Drug Screen V, administered during the Pre-Sentence Interview, Mr. Sabb-Visga can be diagnosed with a severe substance abuse disorder. In fact, both Mr. Sabb-Visga and his maternal grandparents believe that his use of methamphetamine "contributed to his involvement in the instant offense."

Ultimately, Mr. Sabb-Visga attempted suicide on two separate occasions. The first time was when Mr. Sabb-Visga was 17 years old, and he took "a bunch of pills"

that led him to be hospitalized in Naples Community Hospital, and then later to "a teen mental health facility." Mr. Sabb-Visga's second suicide attempt occurred on January 18, 2018, when he was admitted to the Port Huron hospital emergency room after overdosing on approximately 4000 milligrams of Prozac. Following this suicide attempt he was hospitalized in Port Huron hospital. Finally, on August 29, 2022, he was admitted involuntarily to a psychiatric hospital in Port Huron as the result of continued suicidal ideations, by his husband (and Co-defendant Todd).

Despite these difficulties, Mr. Sabb-Visga did manage to overcome these obstacles and accomplish many positive achievements. He graduated from golf coast high school in Naples, FL in 2011. In high school he ran track, wrestled, played basketball and football, and showed horses. He worked odd jobs, including as a laborer at horse farms, and as a server and manager at Texas Roadhouse. Eventually, after meeting his husband, Mr. Sabb-Visga realized his dream by buying and operating in equestrian center, where they offered horse boarding, lessons, training, camps, hauling, and show teams.

Mr. Sabb-Visga's involvement in this Case could only be described as aberrant behavior. There can be no question that Mr. Sabb-Visga's difficult childhood, psychological problems, and substance abuse issues played a major role not only in his multiple suicide attempts, but also "played a major role in the instant offense," as explained by his maternal grandparents. However, to his credit he

immediately cooperated with law enforcement in the investigation of this Case, giving a full confession upon his arrest.

Mr. Sabb-Visga's personal background and childhood cannot be underestimated – it had a direct and undeniable effect on Mr. Sabb-Visga's involvement in the Present Case. This Court should take this into account when sentencing Mr. Sabb-Visga. A troubled upbringing and domestic violence as a child can be considered by this Court at sentencing *United States v. Lopez*, 938 F.2d 1293, 1298 (D.C. Cir. 1991). "Children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens." *Santosky v. Kramer*, 455 U.S. 745, 789 (1982); *see U.S. v. Deigert*, 916 F.2d 916, 918-19 (4th Cir. 1990)

Furthermore, "[e]vidence regarding social background and mental health is significant, as there is a 'belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background or to emotional and mental problems, may be less culpable than defendants who have no such excuse.'" *Douglas v. Woodford*, 316 F.3d 1079, 1090 (9th Cir. 2003) (quoting *Boyde v. California,* 494 U.S. 370, 382 (1990)). *See also United States v. Floyd*, 945 F.2d 1096 (9th Cir. 1991), *overruled on other grounds*, *United States v. Atkinson*, 990 F.2d 501 (9th Cir. 1993) (affirming a departure in a drug case from a guideline range of 30 years to life to 17 years because of defendant's abandonment

by his parents and lack of guidance as a youth).[9]

**C.**      **This Honorable Court should grant Mr. Sabb-Visga a variance because while being sentenced for sexual exploitation of child, there are mitigating factors behind his involvement in the Present Case. [3553(a)(1) factors – history and characteristics of the defendant].**

Mr. Sabb-Visga was evaluated by Dr. Atara Abramsky, a forensic psychologist with an expertise and evaluating and treating sex offenders.[10] Dr. Abramsky's findings and report are significant when it comes to fashioning a sentence for Mr. Sabb-Visga that is sufficient but not greater than necessary.

First, Dr. Abramsky notes that Mr. Sabb-Visga expressed to her a very sincere and genuine acceptance of responsibility, explained that he is "[f]ully aware of the severity of his circumstances, Mr. Sabb-Visga does seem to have remorse for his actions."

As described in Dr. Abramsky's Report, Mr. Sabb-Visga suffers from a significant mental health history. Dr. Abramsky explains that his childhood is certainly a significant factor as "Mr. Sabb-Visga has experienced a significant amount of trauma in his life. First, he was witness to domestic violence in his home

---

[9] Note: while the Guidelines eliminated this ground in §5K2.0 (d)(1), *Booker* has given it new life.

[10] Dr. Abramsky's CV and report is attached as part of the Appendix to this Memorandum.

from his biological father and stepfather. . . . Next, he reports sexual abuse throughout his childhood."

Dr. Abramsky's diagnosis of Mr. Sabb-Visga is that he "is likely experiencing psychological dysfunction of a mild-to-moderate severity. Diagnostically, this profile is suggestive of a bipolar disorder which includes hypomanic episodes."

As to his risk assessment as a sex offender, Dr. Abramsky explains that:

> Mr. Sabb-Visga's score on the Static-99R was calculated based on the review of all available records, as well as an interview with him. His score of two places him in the average range of risk for reoffending. His percentile rank is 48.9, which means his score is lower than 52.1 percent of routine samples of sexual offenders. In that sample, the average five-year sexual recidivism rate is between five and 15 percent. This means that, out of 100 sexual offenders of mixed-risk levels, between five and 15 would be charged or convicted of a new sexual offense after five years in the community. Conversely, between 85 and 95 would not be charged or convicted of a new sexual offence during that time period.
>
> His score of two places his five-year sexual recidivism rate between four and 5.2 percent. This means that, out of 100 sexual offenders with the same risk score, between four and six would be charged or convicted of a new sexual offence after five years in the community. Conversely, between 94 and 96 would not be charged or convicted of a new sexual offence during that time period.

However, the most significant psychological/medical issue in his life is his addiction to drugs, namely crystal methamphetamine. Mr. Sabb-Visga's substance abuse history stretches back about a decade and has dominated the last several years of Mr. Sabb-Visga's life.  Dr. Abramsky concludes that the extremely serious nature

of Mr. Sabb-Visga's substance abuse history, and its impact on his involvement in

the Present Case, as follows:

> Mr. Sabb-Visga reports he began using crystal methamphetamine during a depressive episode when he had been denied the adoption of a child and was feeling hopeless and helpless. The use of crystal methamphetamine may have begun as an unhealthy coping skill used to manage his depression. Unfortunately, Mr. Sabb-Visga is prone to addiction as he is genetically likely wired towards it. Once this began, Mr. Sabb-Visga was under the spell of crystal methamphetamine, a drug which heightens senses, including sexuality. He began obsessing over father-son relationships, discovering people online that were endorsing sexual relationships with children and, I believe, this is likely how the situation began for him.

> In looking at the totality of these circumstances, it appears that the introduction of crystal methamphetamine to Mr. Sabb-Visga's life directly and tragically changed the trajectory of his adaptation. Prior to this, he had spent decades around children with no history of sexually inappropriate behaviors. Moreover, the original and primary victim in this case had been living with the couple for years before any sexually inappropriate behaviors happened. Unfortunately, the perfect storm brewed and unfolded for Mr. Sabb-Visga. Increased stressors fueled his mental health issues, which led to self - medicating. Once crystal methamphetamine was in his life, it took over. He was not eating or sleeping, experienced psychotic symptoms and became obsessive.

> Perhaps it was his own unresolved issues with his father that contributed to his obsession with the father-son dynamic, but in a haze of crystal methamphetamine, it took a very dark turn. His judgement was poor and his behavior catastrophic. It is in no way an excuse for his behavior, but it does help us understand how this would occur at this specific time in his life as these crimes, while grossly inappropriate, do appear to be a significant shift from his normal functioning.

In conclusion, Mr. Sabb-Visga is a man in need of treatment. He is what we would consider a dual diagnosis individual, which means he has mental health and substance abuse issues that are interwoven in a way that creates extremely poor functioning. However, he does have the capacity for stabilization with the proper supports in place. Regarding his crime, he has taken responsibility for his actions by pleading guilty, is developing insight into his behavior, and expresses severe remorse for his action. Moreover, on a commonly used measure of risk for recidivism, given his historical factors, he presents as somebody that is at average risk for reoffending, which translates to less than a seven percent chance of reoffending. Undoubtedly, with proper clinical care, support and guidance, his risk for recidivism will decrease further.

The federal sentencing guidelines "explicitly acknowledge that a combination or aggregation of factors could distinguish a case from the 'heartland' of cases." *United States v. Coleman*, 188 F3d 354, 361 (6th Cir. 1999). Case law makes it clear that even if a district court cannot use a traditional downward departure based on a certain mitigating factor (such as substance abuse), the court may nevertheless consider the same factor justifying a downward "variance" and reach the same sentence under the 3553(a) analysis. *See United States v. Garcia*, 497 F.3d 964, 971-72 (9th Cir. 2007). In *Garcia*, the district judge held that it had no power to consider to defendant's drug addiction and resulting mental impairment as a mitigating factor under 18 U.S.C. § 3553(a). The 9th Circuit reversed, finding that the fact that the guidelines preclude downward departure because of voluntary use of drugs under

USSG § 5K2.13 and 5H1.4 does not preclude a judge from using same as mitigating

factor under § 3553(a):

> Just because a consideration was improper under the mandatory
> Guidelines regime does not mean that it is necessarily improper
> under the advisory Guidelines regime. . . . We agree with our sister
> circuits and hold that district courts are not prohibited in all
> circumstances from considering a defendant's drug addiction in
> choosing a reasonable sentence.

This Court should take this all into account when sentencing Mr. Sabb-Visga.

Mr. Sabb-Visga's psychological issues and substance abuse problem are all

3553(a)(1) factors (history and characteristics of the defendant) that the Court must

use in fashioning the appropriate sentence.

**D.      This Court should sentence Mr. Sabb-Visga to the minimum of the
11(c)(1)(C) sentence agreement of 480 months because the proposed
guideline range is too harsh a sentence and is greater than necessary to
support the goals of sentencing under § 3553(a).   [3553(a)(1) factor –
history and characteristics of the offense and the defendant].**

The advisory guideline is greater than necessary, is not empirically based, and

is just too harsh. The United States Sentencing Guidelines, as they exist today, do

not adequately distinguish among offenders in terms of their culpability and

dangerousness in cases involving sexual exploitation of child.

Even the former chief law enforcement officer of the United States (Attorney General Holder) believes that too many people are incarcerated for too long.[11]   A sentence that is too harsh does not promote justice or respect for law, but rather the opposite, and this Court (as well as all courts) should free itself from "guidelineitis." Courts must fashion a sentence in a manner that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing criminal defendants.   18 U.S.C. § 3553(a). Quite simply, as applied in the Present Case, to Mr. Sabb-Visga, the guidelines "are far too severe."[12]

---

[11] *See,* Speech of Attorney General Eric Holder delivered on August 12, 2013 before the ABA convention in San Francisco: **"And with an** *outsized, unnecessarily large prison population,* **we need to ensure that incarceration is used to punish, deter, and rehabilitate — not merely to warehouse and forget…..it's** clear…that ***too many Americans go to too many prisons for far too long, and for no truly good law enforcement reason..*** **widespread incarceration at the federal, state, and local levels is both ineffective and unsustainable.  It imposes a significant economic burden — totaling $80 billion in 2010 alone — and it comes with human and moral costs that are impossible to calculate**." found at http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html.

*See also,* Speech of Attorney General Eric Holder on April 5, 2013, delivered at the 15th Annual National Action Network Convention stated as follows; "Too many people go to too many prisons for far too long for no good law enforcement reason.  It is time to ask ourselves some fundamental questions about our criminal justice system.  Statutes passed by legislatures that mandate sentences, irrespective of the unique facts of an individual case, too often bear no relation to the conduct at issue, breed disrespect for the system, and are ultimately counterproductive.  It is time to examine our systems and determine what truly works.  We need to ensure that incarceration is used to punish, to rehabilitate, and to deter — and not simply to warehouse and forget." found at http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130404.html

[12] Justice Anthony Kennedy, address to the Ninth Circuit Judicial Conference (July 9, 2006).

Sentencing emanates "from a law gone awry" and "massively heavy punishment cannot be justified in a civilized society . . . ." *United States v. Stockton*, 968 F.2d 715, 721 (8th Cir. 1992) (Bright, Senior Circuit J., *concurring*).   A sentence higher than the mandatory minimum in the Present Case would result in an "utter travesty of justice" due to the guidelines "fetish with abstract arithmetic," and cause harm on "human beings if not cabined by common sense." *United States v. Adelson*, 441 F.Supp.2d 506, 512 (S.D.N.Y. 2006).

"[S]entencing is a difficult art [and it] is easy to make it mechanical. . . .  It is, however, an act of reason as the judge looking at this particular person and the circumstances of the crime that this particular person has committed makes a judgment following the prescriptions of the statute." *United States v. Diaz-Argueta*,  447 F.3d 1167 (9th Cir. 2006) (*overruled in part on other grounds*)  In other words, "fashioning a just sentence cannot be reduced to a mere arithmetical exercise [and that] reliance solely on numbers, quantities, offense levels, criminal history categories, and matrices produces an illusory precision that obscures the fact that sentencing, in the end, must involve the exercise of *judgment.*" *United States v. Biheiri*, 356 F. Supp. 2d 589  (E.D.Va. 2005).

The advisory guideline in this Case is too harsh and greater than necessary. Mr. Sabb-Visga pled guilty to two counts of sexual exploitation of children, and one count of conspiracy to do the same.  In addition, despite not having any criminal

record, and zero criminal history points, his sentence is being enhanced significantly under U.S.S.G. § 4B1.5 for being a repeat and dangerous sex offender.  Importantly, all of these issues are aggravating factors that are taken into account significantly by the guidelines. The offense starts with an extremely high offense level of 32, the minor's age adds +4 offense levels, commission of a sex act adds +2 levels, the distribution of sexually explicit material adds +2 levels, his status as having custody/care/control of the minor adds +2 levels, and finally the repeat and dangerous sex offender enhancement adds a whopping +5 levels – a total offense level of 44.

There is no question that this offense is extremely serious. And yes, the facts are troubling. However, the abhorrent facts and circumstances have an enormous impact on his sentence by creating a 15-year mandatory minimum, and significantly increasing his guidelines – in fact, the sexual exploitation of a child base level and the repeat and dangerous sex offender enhancement alone result in a score of 37, without the other three enhancements totaling an additional +7 points.

However, at the same time it must be emphasized that the guidelines score all of these factors, and therefore take into account the facts of this case that make it abhorrent.  With these factors already taken into account, the challenge for this Court is that it must take this guideline range as a starting point, and then apply the 3553(a)

factors to determine the appropriate sentence for Mr. Sabb-Visga as an individual under 3553(a).

"[P]roportionality"- the imposition of "appropriately different sentences for criminal conduct of differing severity"- has long been a primary aim of the federal sentencing system.   U.S.S.G., Ch.1, Pt. A, intro., comment. 3 (2008).   This proportionality principle would prohibit, for example, sentencing every offender to the statutory maximum punishment: the most severe punishment must be reserved for the worst offenders. As stated by the Second Circuit in *Dorvee*, *supra*, "the § 2G2.2 sentencing enhancements cobbled together through this process routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases."   The child porn guideline is beset with "irrationality" and that "unless applied with great care, [this guideline] can lead to unreasonable sentences that are inconsistent with what § 3553 requires." And finally:

> [By] concentrating all offenders at or near the statutory maximum, [this guideline] eviscerates the fundamental statutory requirement in § 3553(a) that district courts consider 'the nature and circumstances of the offense and the history and characteristics of the defendant' and violates the principle, reinforced in *Gall*, that courts must guard against unwarranted similarities among sentences for defendants who have been found guilty of dissimilar conduct.

As explained by a district court in *United States v Plachy*, 2013 WL 1914613 (unpub.) (D. Neb. May 8, 2013), "[a]s the Commission recently noted, the

Guidelines' sentencing scheme for child pornography crimes illogically skews sentences for 'average' defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, thus blurring distinctions between the least culpable and the worst offenders."

As the Sixth Circuit has observed, sentences at or near the statutory maximum should be reserved for the "worst possible variation of the crime" committed by the most dangerous offender. *See United States v. Aleo*, 681 F.3d 290, 302 (6th Cir. 2012); *cf. United States v. Poynter*, 495 F.3d 349, 354 (6th Cir. 2007) ("not all repeat sex offenders deserve" to be sentenced at the statutory maximum; "otherwise, Congress would not have set a statutory range of 0-60 years"). The Sixth Circuit has also given examples of factors that in general might justify a sentence at or approaching the statutory maximum as, for example, fleeing from authorities, using violence, or having prior convictions for of sex offenses with children. *See Aleo*, 681 F.3d at 302; *Poynter*, 495 F.3d at 354.

Mr. Sabb-Visga is far from being one of the "worst offenders" of the crime of sexual exploitation of a child. For starters, neither Mr. Sabb-Visga worked with minors for years, and had never been previously accused of any misconduct. Furthermore, while the Defendant and Co-Defendant took video and photos of the minors in this Case, this was for their own personal viewing. While this is

reprehensible and certainly illegal, there is no evidence that Mr. Sabb-Visga produced the child pornography to distribute it commercially, or even share it with anyone other than the Co-Defendant.

Mr. Sabb-Visga is a true first-time offender, with no prior criminal history – even for arrests. Into middle age, he lived an entirely responsible life, working hard, and overcoming numerous obstacles to become a productive member of society. Mr. Sabb-Visga enjoins the strong support of both family and friends, including his maternal grandparents, mother, siblings, and half siblings. His being charged with offenses such as those in the Present Case certainly represents aberrant behavior. There is no evidence Mr. Sabb-Visga ever previously engaged in any criminal behavior, let alone something as serious as the Present Charges. Finally, Mr. Sabb-Visga cooperated immediately with law enforcement in the investigation of this Case, giving a full confession upon his arrest.

Not only have courts relied upon policy difference with the child pornography guidelines to support variances in sentencing, but many have gone on to recognize that the issue of multiple enhancements often results in unfair double counting of offense variables in these cases. For example, in *United States v Price*, 775 F.3d 828 (7th Cir. 2014), the Seventh Circuit found no abuse of discretion where a district court gave a variance from a guideline range of 40 years to 18 years, citing policy differences with the guidelines and because of the multiple enhancements. This was

despite the fact that the defendant was convicted after trial for producing and distributing porn and showed no remorse, and even though he molested children and was a future danger.[13]

The dangers noted in *Price, supra, Dorvee*, *supra*, and *Plachy, supra*, arising from "double counting" from enhancements, "concentrating all offenders at or near the statutory maximum," from "guidelines projections near or exceeding the

---

[13] *See also United States v. Dorvee*, 604 F.3d 84 (2d Cir. 2010) (where defendant pled guilty to distribution of pornography sentence of 240 months vacated as unreasonable in part because of multiple enhancements that apply in almost all cases. The court went on to explain that it was "worth noting that 96.6% of defendants received at least a two-level enhancement based on the number of images possessed On top of that, many of the § 2G2.2 enhancements apply in nearly all cases. Of all sentences under § 2G2.2 in 2009, 94.8% involved an image of a prepubescent minor (qualifying for a two-level increase pursuant to § 2G2.2(b)(2)), 97.2% involved a computer (qualifying for a two-level increase pursuant to § 2G2.2(b)(6)), 73.4% involved an image depicting sadistic or masochistic conduct or other forms of violence (qualifying for a four-level enhancement pursuant to § 2G2.2(b)(4)), and 63.1% involved 600 or more images (qualifying for a five-level enhancement pursuant to §2G2.2(b)(7)(D)). In sum these enhancements, which apply to the vast majority of defendants sentenced under § 2G2.2, add up to 13 levels, resulting in a typical total offense level of 35); *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008) (in case of possession of child porn. where guidelines 135-168 months, district court's variance to 66 months and 10 years supervised release proper in part because district court perceived that multiple enhancements [images of prepubescent minors, distributing for value, use of computer, etc.] were for similar activity that "improperly exaggerated the guidelines" and created punishment greater than necessary. Enhancements that "almost repeat one another...speaks not to a problem of double counting but to a perception that the guidelines sentence is higher than this conduct deserves—a concern that Booker aptly allows a court to consider in applying advisory guidelines."); *United States v. Hanson*, 561 F.Supp.2d 1004 (E.D. Wisc. 2008) (district court cites Troy Sabenow, *Deconstructing the Myth of Careful Study:  A Primer on the Flawed Progression of the Child Pornography Guidelines*).

statutory maximum," and guideline calculations "for 'average' defendants to the upper end of the statutory range,  regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, as  thus blurring distinctions between the least culpable and the worst offenders," are particularly acute in child exploitation enterprise cases.

The offense starts with an extremely high offense lever of 32, and the repeat and dangerous sex offender enhancement adds an additional +5 levels. Given that the nature of the offense requires the victim be an underage minor, that age adds at least +2 levels, if not +4. That results in a ***starting*** offense level in a case such as this of either 37 or 39. Assuming a criminal history category of I, and three points for acceptance of responsibility, the ***VERY BEST*** a defendant charged with this offense could hope for is a guideline range of 210 – 262 (level 37, criminal history category I).  However, how many sexual exploitation of child cases of this type will ***at a minimum*** not involve commission of a sex act, adding another +2 levels. When these base enhancements are added, the true starting offense level for a sexual exploitation of child case becomes a level 39 or 41, which even assuming a criminal history category one becomes guidelines of wither 262 – 327 or 324 – 405 months, and ***far in excess*** of the mandatory minimum of 15 years. It is hard to imagine an offense where all offenders are concentrated "at or near the statutory maximum," from

"guidelines projections near or exceeding the statutory maximum," than what is seen here.

However, since the Guidelines are no longer mandatory, and the district court need only consider them along with its analysis of the section 3553(e) factors, the decision to deny a Guidelines-based downward departure is a smaller factor in the sentencing calculus; *United States v. Erpenbeck*, 532 .3d 423, 331 (6th Cir. 2008) (affirming a sentence despite an erroneous departure pursuant to USSG §5K2.3, "because the sentence was sufficiently justified based on the 18 U.S.C. §3553 factors alone.").[14]

If there had been any lingering doubt about a court's ability to depart on the basis of §3553(a) factors alone, that was that doubt was unambiguously resolved by the Supreme Court in *Pepper v. United States,* 131 S.Ct. 1229 (2011). While indicating that "respectful consideration" must be given to the Advisory Guidelines and commentary, the Court held that a sentencing court has discretion to impose a non-Guidelines sentence where "the Commission's views rest on wholly

---

[14] *United States v. O'Georgia*, 569 F.3d 281, 296 (6th Cir. 2009) (Guidelines departure may be justified "based upon the 3553(e) factors alone."); *United States v. Blue*, 557 F.3d 682, 885-86 (6th Cir. 2009) (same); *United States v. Nelson*, 296 Fed.Appx. 475, 478, 480 (6th Cir. 2008) ("The appellate court may consider the extent of the deviation, but must give due deference to the district court's decision that the §3553(a) factors, on a whole, justify the extent of the variance.")

unconvincing policy rationales not reflected in the sentencing statutes Congress enacted." *Pepper*, 131 S.Ct. at 1247.

A downward variance may be based on the fact that the sentencing guidelines do not properly reflect the sentencing factors as set forth in 3553(a), or reflect an unsound judgment, or would result in an inappropriate sentence. *Rita v. United States*, 551 U.S. 338; 127 S.Ct. at 2468 (2007). Courts "may [also] vary [from Guideline ranges] based solely on policy considerations, ***including disagreements with the Guidelines***." When a guideline is not the product of "empirical data and national experience," it is not an abuse of discretion to conclude that it fails to achieve the goals of sentencing set forth is 3553(a), even in the run-of-the-mill case. *Kimbrough v. United States*, 552 U.S. 85, 128; S.Ct. 558, at 575 (2007).

For Mr. Sabb-Visga, the applicable sentencing guidelines are "far too severe" and would result in just the sort of "massively heavy punishment" unjustified in *Stockton* and a "travesty of justice" warned of in *Adelson*. Quite simply, the draconian length of the proposed sentence does not comport with the statutorily imposed purposes of sentencing found in 3553. A twenty-year sentence would still provide for the statutory purposes without being more harsh than necessary to serve this function.

**E.      This Honorable Court should grant Mr. Sabb-Visga a variance because of a complete lack of a criminal record, and this is his first arrest and**

conviction. [3553(a)(1) factors – history and characteristics of the defendant].

Mr. Sabb-Visga is a true first-time offender, with a prior criminal history that consists of a sole driving infraction – a no operator's license, which resulted in a $148.00 fine. He overcame a horrific and abusive childhood and managed to build a life into adulthood. Mr. Sabb-Visga enjoins the strong support of both family and friends, and these charges certainly represent aberrant behavior. There is no evidence Mr. Sabb-Visga ever previously engaged in any criminal activity, let alone something as serious as the Present Charges. Therefore, this Honorable Court should grant a variance, and sentence Mr. Sabb-Visga to the minimum of the 11(c)(1)(C) sentence agreement of 480 months.

While a lack of criminal history is *de facto* taken into account by the guidelines, and even more so with the passage of the zero-point offender provision, there remains a significant difference between a person with a criminal history category of I, and one with no prior convictions at all. To start with, passage of the zero-point offender provision shows that the sentencing Commission recognizes the importance and value of a person who truly has no prior criminal record. While it is true that Mr. Sabb-Visga does not get the benefit of the zero-point offender provision given the charged offenses in the present case, the arguments contained in this section of the Memorandum remain applicable as 3553(a) factors.

28 U.S.C. § 994(j), charges the Sentencing Commission with "insur[ing] that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense[.]"

In *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009), the Ninth Circuit found that a district court's *sua sponte* variance to probation in a child pornography case with guidelines of 41-51 months as not unreasonable, in part because defendant's first conviction "did not fully account for his complete lack of criminal history" because a defendant with minor criminal history still falls in criminal history category I.

Likewise, in *United States v. Huckins*, 529 F.3d 1312 (10th Cir. 2008), the Tenth Circuit upheld a variance to 24 months in a child porn case with guidelines 78 - 97 months. The court reasoned that this was defendant's first conviction, and rejected the government's argument that the guidelines already considered this by placing defendant in criminal history category I:

> . . . although the Guidelines discourage granting a downward departure based upon criminal history when the defendant has been placed in a criminal history category of I...this is a not a departure case, it is a variance case.... and, after *Gall* and *Kimbrough*, a factor's disfavor by the Guidelines no longer excludes it from consideration under § 3553(a).... Therefore, a district court may weigh a defendant's lack of a criminal record, even when the defendant has been placed into a criminal history category of I, in its § 3553(a) analysis.

In fact, the Sentencing Commission's own research suggests that proper application of 3553(a) in the case of a "true" first offender now strongly supports a below-guideline variance because of 3553(a)(2)(C) and 3553(a)(6). As Professor Berman points out in his sentencing blog, these factors are only properly acknowledged if and when a "true" first offender gets a lower sentence than the advisory range suggested for all the other persons with some criminal history that are lumped into Criminal History Category I. *See* Sentencing Commission's report, Recidivism and the "First Offender" (May 2004), available at http://www.ussc.gov/publicat/Recidivism_FirstOffender.pdf, which notes that:

> The analysis [of empirical data on re-offending] delineates recidivism risk for offenders with minimal prior criminal history and shows that the risk is lowest for offenders with the least experience in the criminal justice system. Offenders with zero criminal history points have lower recidivism rates than offenders with one or more criminal history points.  Even among offenders with zero criminal history points, offenders who have never been arrested have the lowest recidivism risk of all.[15]

## **CONCLUSION**

---

[15] *United States v. Duane*, 533 F.3d 441 (6th Cir. 2008)  ([T]he district court did not respond to Duane's first argument — that he deserved a more lenient sentence because he had zero criminal history points.  This was not a particularly strong argument given that Duane's criminal history category was taken into account in determining his Guidelines range.  But the argument was not completely frivolous.  Because Duane had zero points at age 57, he might plausibly argue that even category I — which applies when a defendant has zero or one criminal history point(s) — overstated his criminal history to some degree.");

WHEREFORE Defendant requests this Honorable Court to grant a variance, and sentence Mr. Sabb-Visga. Mr. Sabb-Visga respectfully requests that this Honorable Court sentence him to the minimum of the 11(c)(1)(C) sentence agreement of 480 months.


Respectfully submitted,


/s/ Mark Satawa

Mark A. Satawa P47021
Attorney for Defendant
26777 Central Park Blvd,; Suite 300
Southfield, MI  48076
(248) 356-8320
e-Mail: mark@satawalaw.com

Dated:  September 11, 2024